UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SAFE AFFORDABLE GEORGIA, INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>JAMES D. KREYENBUHL, in his official capacity as Chairman of the State Ethics Commission; RICK THOMPSON, in his official capacity as Vice Chairman of the State Ethics Commission; DAVID BURGE, STAN WISE, and DANA DIMENT, in their official capacities as members of the State Ethics Commission; and CHRISTOPHER M. CARR, in his official capacity as the Attorney General of Georgia,<br><br>    *Defendants.* | Case No. |

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

### INTRODUCTION

The Constitution reflects common sense: political candidates running against each other must be subject to the same laws governing their race. The Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis v. FEC*, 554 U.S. 724, 738 (2008).

Yet Georgia law allows some candidates to directly solicit unlimited contributions to committees that can support their campaigns and permits them to coordinate spending of those unlimited contributions with their campaign committee. The sitting Lieutenant Governor, a candidate for governor, is currently allowed to create and chair a leadership committee that is permitted unlimited fundraising for use in his own campaign for governor and in coordination with his campaign committee. But the candidates opposing him are not allowed to create and chair leadership committees until they win a primary election for either governor or lieutenant governor. Alone among current candidates for governor, the sitting lieutenant governor can solicit and accept unlimited contributions that can support his own campaign. This means that one current candidate for governor has different campaign finance rules that govern him than the other candidates. The Constitution does not allow this.

Safe Affordable Georgia, a political committee chaired by Georgia Secretary of State and gubernatorial candidate Brad Raffensperger, brings this case challenging this scheme that allows different campaign finance rules for candidates running for the same office. However, this case does not seek to restrict any campaign speech that Georgia law allows to certain candidates; it simply seeks to allow all candidates to participate in the same manner.

In the United States, liberty is the default. In the context of political speech, the best remedy for uneven speech rights is to remove speech restrictions, not to restrict the speech rights of the unfairly advantaged. We level up, not down. Thus, the appropriate remedy to this flawed campaign finance structure is to allow Safe Affordable Georgia the same freedom to raise and spend enjoyed by the committee supporting other candidates for governor.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over this action seeking declaratory and injunctive relief brought under 42 U.S.C. § 1983 to protect Plaintiff's First and Fourteenth Amendment rights.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

3. Plaintiff Safe Affordable Georgia, Inc. is both an "independent committee" under Georgia law, registered as such with the State Ethics Commission ("SEC") on November 13, 2025; and a Political Action Committee ("PAC"), registered as such with the SEC on November 21, 2025.

4. Defendants James D. Kreyenbuhl, Rick Thompson, David Burge, Stan Wise and Dana Diment are the five members of the SEC.

5. The SEC is the state agency responsible for civil enforcement of Georgia campaign finance laws, including the fundraising purpose restrictions in O.C.G.A. § 21-5-30(a) and the contribution and coordination limits in O.C.G.A. § 21-5-41.

6. Defendant Chris Carr is the Georgia Attorney General, and is responsible for the criminal enforcement of Georgia campaign finance laws.

7. All defendants are sued in their official capacities only.

## STATEMENT OF FACTS

### *The Regulatory Regime*

8. Under Georgia law, a "campaign committee" is defined as "the candidate, person, or committee which accepts contributions or makes expenditures designed to bring about the nomination or election of an individual to any elected office." O.C.G.A. § 21-5-3(2).

9. O.C.G.A. § 21-5-41(a) prohibits any statewide "candidate or campaign committee" from receiving contributions "in the aggregate" from any person exceeding $8,400 for primary and general elections and $4,800 for runoff elections, as adjusted for inflation and deflation by the Ethics Commission. *See* https://ethics.ga.gov/candidate-information-statewide/ (setting current limits based on inflation adjustments).

10. An "independent committee" is "any committee . . . other than a campaign committee, political party, or political action committee, which

receives donations during a calendar year from persons who are members or supporters of the committee and which expends such funds either for the purpose of affecting the outcome of an election for any elected office or to advocate the election or defeat of any particular candidate." O.C.G.A. § 21-5-3(15).

11. An independent committee may not coordinate its activities with an individual candidate or his or her campaign committee. *See* Ga. Comp. R. & Regs, R. 189-6-04. ("[A]n expenditure is 'independent' only if it meets certain conditions. It must not be made with the cooperation or consent of, or in consultation with, or at the request or suggestion of any candidate or any of his or her agents or authorized committees. An expenditure which does not meet the above criteria for independence is considered a contribution which is subject to limits.").

12. A "political action committee" (PAC) is an organization "which receives donations during a calendar year from persons who are members or supporters of the committee and which contributes funds to one or more candidates for public office or campaign committees of candidates for public office." O.C.G.A. § 21-5-3(20). PAC contributions to candidates are subject to the limits contained in O.C.G.A. § 21-5-41.

13. An organization may be both an independent committee that expends funds in support of or opposition to a candidate, and a PAC that

5

contributes to candidates. *See* SEC A.O. 2015-02. Such organizations are often referred to as "hybrid PACs."

14. A "leadership committee" is "a committee, corporation, or organization chaired by the Governor, the Lieutenant Governor, the nominee of a political party for Governor selected in a primary election in the year in which he or she is nominated, or the nominee of a political party for Governor or Lieutenant Governor selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a).

15. Section 21-5-30(a) states that "no contributions to bring about the nomination or election of a candidate for any office shall be made or accepted except directly to or by a candidate or such candidate's campaign committee." This provision prohibits a hybrid PAC from receiving contributions expressly to advance a particular candidate.

16. However, leadership committees may accept such contributions. "A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate, may defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office, and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of such office." O.C.G.A. § 21-5-34.2(d). "A leadership committee shall be a separate legal entity from a

6

candidate's campaign committee and shall not be considered an independent committee." O.C.G.A. § 21-5-34.2(f).

17. A leadership committee may coordinate expenditures with a campaign committee and cover expenses ordinarily borne by a campaign committee. O.C.G.A. § 21-5-34.2(e) ("The contribution limits in Code Section 21-5-41 shall not apply to contributions to a leadership committee or expenditures made by a leadership committee in support of a candidate or a group of named candidates").

18. Georgia law does not impose fundraising limits on independent committees, PACs, or leadership committees.

19. The primary functional distinction between a hybrid PAC and a leadership committee is that a leadership committee may coordinate expenditures with candidates and candidate campaign committees without limits and may raise funds for this express purpose. Additionally, political candidates can solicit funds into leadership committees to directly support their own campaign, while candidates cannot solicit funds for hybrid PACs to support their own campaign.

20. The primary functional distinction between a leadership committee and a campaign committee is that the latter has strict fundraising limits, whereas the former has none.

21. A candidate with a leadership committee is statutorily bestowed a significant fundraising and expenditure advantage over a candidate who isn't allowed to set up a leadership committee. A competing campaign committee cannot receive donations in amounts a leadership committee can raise. Even if a competing candidate chairs a hybrid PAC, the hybrid PAC cannot raise funds for the candidate's race, coordinate with the campaign or candidate, or spend in that candidate's race.

### *The 2026 Gubernatorial Primary*

22. Brad Raffensperger, Georgia's Secretary of State and a candidate in the 2026 Republican primary for governor, chairs Plaintiff Safe Affordable Georgia.

23. The multicandidate field for the Republican gubernatorial nomination also includes Burt Jones, the sitting Lieutenant Governor.

24. As sitting Lieutenant Governor, Mr. Jones is allowed a leadership committee, and he has registered one with the SEC—WBJ Leadership Committee, Inc. ("WBJ"). WBJ functions as a parallel campaign committee with unlimited fundraising abilities, alongside Jones's traditional campaign committee, Burt Jones for Georgia, Inc.

25. In its most recent filing with the SEC, WBJ disclosed over $14 million cash on hand, all of which is available to be spent as directed by Jones in support of his primary campaign.

8

26. As disclosed in its June 2025 Disclosure Report, WBJ received contributions of $100,000 from four sources, and approximately 60 contributions of $10,000 or more, during the reporting period. Each of these donations exceeds the limits for contributions to campaign committees. Yet, WBJ and Jones can spend these funds for the same purposes and with coordination with the candidate that Jones's campaign committee can.

27. In effect, the leadership committee option allows one gubernatorial candidate a greater ability to communicate with voters and donors.

28. Both Raffensperger and Jones are statewide elected officials. Neither is the incumbent governor. They should be on equal footing under the law when running in their party's primary election for governor.

29. Yet while Safe Affordable Georgia cannot make expenditures to support Raffensperger in the primary, WBJ can make expenditures to support Jones.

30. As a hybrid PAC chaired by Raffensperger, Safe Affordable Georgia is especially impacted and disadvantaged by WBJ's superior statutory right to participate in the 2026 gubernatorial primary election. Safe Affordable Georgia is allowed less free speech rights than WBJ even though they both wish to participate in the same election simply because Safe Affordable Georgia seeks to support a different candidate than WBJ does.

## *The Challenged Provisions' Continuing Impact on Safe Affordable Georgia*

31. Safe Affordable Georgia intends, once the challenged restrictions are enjoined, to coordinate with Raffensperger, his gubernatorial campaign committee, and other candidates and campaign committees to the same extent WBJ is permitted to coordinate with Jones, Jones's campaign committee, and other candidates and committees.

32. Safe Affordable Georgia intends, once the challenged restrictions are enjoined, to accept above-limits contributions and coordinate the expenditure of those funds with campaign committees to advance the election prospects of the supported candidates.

33. However, Safe Affordable Georgia refrains from soliciting contributions for coordination purposes, and from coordinating with candidates and campaign committees, including Raffensperger and his campaign committee, Brad for Governor, Inc, on account of the coordinated spending limits Georgia places on hybrid PACs through O.C.G.A. § 21-5-30(a)'s bar on a hybrid PAC accepting contributions made to bring about the nomination or election of a candidate for any office; and O.C.G.A. § 21-5-41's bar on a hybrid PAC coordinating its expenditures with campaign committees.

# COUNT ONE
## RIGHT TO FREE SPEECH AND ASSOCIATION
## 42 U.S.C. § 1983 – U.S. CONST. AMEND. I

34. Plaintiff re-alleges and incorporates by reference the above paragraphs of the Complaint as though fully set forth herein.

35. Under the First Amendment, the only state interest that might support limits on campaign and election related spending is the state's interest in avoiding quid pro quo corruption or the appearance thereof.

36. The government bears the burden of establishing that campaign finance regulations can survive the appropriate level of scrutiny.

37. By allowing leadership committees to coordinate without limits with any campaign committee, including the leadership committee chair's own campaign committee, the Georgia legislature has recognized that coordination between a leadership committee and a campaign committee is not quid pro quo corruption or its appearance.

38. Under Georgia law, a leadership committee is essentially a hybrid PAC that can make expenditures, coordinated with campaign committees, in amounts higher than the maximum amounts that limit non-leadership committees.

39. Georgia has concluded that allowing a committee for the benefit of the sitting lieutenant governor, who has a large role in what legislation is passed by the General Assembly and becomes law in the state, to raise

unlimited funds for use in his campaign or for other candidates that he supports is not likely to result in quid pro quo corruption or its appearance, even allowing leadership committees to raise and accept fund during the legislative session.

40. There is no reason to suppose that the coordination of spending between hybrid PACs, including Safe Affordable Georgia, and campaign committees would be any more likely to result in quid pro quo corruption, real or apparent, than would coordination between leadership committees and campaign committees. In fact, coordination between Safe Affordable Georgia and candidate committees that it intends to support would be less likely to result in quid pro quo corruption because, unlike WBJ, the chair of Safe Affordable Georgia has no role in the legislative process.

41. There is no sufficiently compelling reason for the government to allow leadership committees to have greater abilities to coordinate than other hybrid PACs, including Safe Affordable Georgia.

42. As applied to Safe Affordable Georgia's fundraising and spending, Sections 21-5-30(a) and 21-5-41 do not survive any form of heightened First Amendment scrutiny. They do not further the governmental interest in preventing corruption or the appearance of corruption. The fundraising restrictions and coordination prohibition are neither narrowly tailored, nor do

they have a substantial relation to any sufficiently compelling governmental interest.

43. Section 21-5-41 violates the First Amendment right to engage in political speech and association as applied to Safe Affordable Georgia by unjustifiably restricting expenditures by hybrid PACs more than leadership committees.

44. Accordingly, Sections 21-5-30(a) and 21-5-41, as applied to Safe Affordable Georgia's fundraising and expenditures to support Raffensperger's primary campaign or in coordination with any other candidate committee, violate 42 U.S.C. § 1983 by violating Safe Affordable Georgia's First Amendment rights to free speech and association. Safe Affordable Georgia is thus entitled to declaratory and injunctive relief against Sections 21-5-30(a)'s application to funds raised to support any candidacy, including Raffensperger's gubernatorial candidacy, and Section 21-5-41's application to Safe Affordable Georgia's expenditures in support of any candidacy, including Raffensperger's gubernatorial candidacy, or in coordination with any candidate or campaign committee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendants as follows:

a. Orders preliminarily and permanently enjoining defendants, their

officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing O.C.G.A. § 21-5-30(a) to bar Safe Affordable Georgia, Inc. from accepting contributions made to bring about the nomination or election of a candidate for any office; from enforcing O.C.G.A. § 21-5-41 to bar Safe Affordable Georgia, Inc., from coordinating its expenditures with candidate committees; and from enforcing Ga. Comp. R. & Regs, R. 189-6-04, implementing O.C.G.A. § 21-5-41;

b. Declaratory relief consistent with the injunctions, to the effect that application of O.C.G.A. § 21-5-30(a) to bar Safe Affordable Georgia, Inc. from accepting contributions made to bring about the nomination or election of a candidate for any office violates the First Amendment, as does application of O.C.G.A. § 21-5-41 to bar Safe Affordable Georgia, Inc., from coordinating its expenditures with candidate committees;

c. Costs of suit;

d. Attorney fees and costs pursuant to 42 U.S.C. § 1988; and,

e. Any other further relief as the Court may deem just and proper.

Dated: December 8, 2025        Respectfully submitted,

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914

**BRADLEY ARANT BOULT CUMMINGS LLP**
1230 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Tel: (404) 868-2030
canulewicz@bradley.com

*/s/ Charles Miller*
Charles Miller*
**INSTITUTE FOR FREE SPEECH**
1150 Connecticut Ave., NW,
Suite 801
Washington, D.C. 20036
Tel: (202) 301-9800
Fax: (202) 301-3399
cmiller@ifs.org
**pro hac vice admission forthcoming*

*Counsel for Plaintiff*