IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SAFE AFFORDABLE GEORGIA, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | 1:25-CV-06985-ELR |
| JAMES D. KREYENBUHL, in his official capacity as Chairman of the State Ethics Commission, RICK THOMPSON, in his official capacity as Vice Chairman of the State Ethics Commission, DAVID BURGE, STAN WISE, and DANA DIMENT, in their official capacities as members of the State Ethics Commission, and CHRISTOPHER M. CARR, in his official capacity as the Attorney General of Georgia, | * * * * * * * * * * * * * * * | |
| Defendants. | * * | |

_____

**ORDER**

_____

Presently before the Court is Plaintiff Safe Affordable Georgia, Inc.'s Motion for Preliminary Injunction. [Doc. 2]. For the reasons set forth below, the Court denies the motion.

**I.      Background**

This case arises out of Georgia's differential treatment of certain types of campaign financing entities. In this suit, Plaintiff Safe Affordable Georgia, Inc. (SAG), a hybrid political action committee (PAC) chaired by Republican gubernatorial primary candidate Brad Raffensperger, seeks to prohibit Georgia's enforcement of certain of its campaign financing laws that limit SAG's ability to contribute to and coordinate with its chosen candidate in the Republican gubernatorial primary. SAG maintains that Georgia's enforcement of these laws unconstitutionally restrains SAG's speech in support of Raffensperger by subjecting SAG to contribution limits not applicable to WBJ Leadership Committee, Inc. ("WBJ"), a committee chaired by one of Raffensperger's primary opponents, Burt Jones. The Court takes up this issue below, starting with an overview of Georgia's statutory landscape for campaign financing, followed by a discussion of recent litigation in this sphere, and ending with an analysis of SAG's constitutional challenge.

**A.     Georgia's Campaign Financing Framework**

Under Georgia law, a "campaign committee" is "the candidate, person, or committee which accepts contributions or makes expenditures designed to bring about the nomination or election of an individual to any elected office." O.C.G.A. § 21-5-3(2). Importantly, Georgia law limits the contributions a campaign

committee receives from any person for each state-wide primary, general, and runoff election.[1] Id. § 21-5-41.

An "independent committee" is a committee, other than a "campaign committee, political party, or [PAC], which receives donations during a calendar year . . . and which expends such funds either for the purpose of affecting the outcome of an election for any elected office or to advocate the election or defeat of any particular candidate." O.C.G.A. § 21-5-3(15). An independent committee accepting contributions or making expenditures for the above-described purpose must file disclosure reports listing all contributions over $100. O.C.G.A. § 21-5-34(f)(1), (2)(A). Georgia law imposes no limit on the contributions an independent committee may recieve from individual donors. This benefit, however, is only available to the independent committee as long as the committee does not coordinate its expenditures with a candidate or the candidate's campaign committee. Ga. Comp. R. & Regs. 189-6-.04. Instead, such coordinated expenditures are not considered independent and are subject to contribution limits. Id.; see also McConnell v. Fed. Election Comm'n, 540 U.S. 93, 219 (2003) ("[I]t has been settled that expenditures by a noncandidate that are 'controlled by or coordinated with the

---

[1] These limits are currently $8,400 for a primary election, $4,800 for a primary election run-off, $8,400 for a general election, and $4,800 for a general election runoff. See State Ethics Comm'n, Contribution Limits, https://ethics.ga.gov/contribution-limits/ (last visited January 27, 2026); see O.C.G.A. § 21-5-41(k) (authorizing the State Ethics Commission to raise contribution limits with inflation).

candidate and his campaign' may be treated as indirect contributions[.]" (quoting Buckley v. Valeo, 424 U.S. 1, 46 (1976)).

A PAC is an organization which "receives donations during a calendar year from persons who are members or supporters of the [PAC] and which contributes funds to one or more candidates for public office or campaign committees of candidates for public office." O.C.G.A. § 21-5-3(20)(A). While Georgia imposes no limits on the amount of donations a PAC may recieve, it caps a PAC's contributions to candidates or their campaign committees. See O.C.G.A. § 21-5-41. An organization can be both a PAC that contributes directly to candidates and an independent committee that expends funds in support of or in opposition to a candidate, otherwise known as a "hybrid PAC." See Ga. State Ethics Comm'n, Advisory Op. No. 2015-02 (June 17, 2015). SAG is a hybrid PAC. Compl. ¶ 3 [Doc. 1].

Neither independent committees nor PACs may accept "contributions to bring about the nomination or election of a candidate for any office." See O.C.G.A. § 21-5-30(a) (the "fundraising-purpose restriction"). Instead, only candidates and their campaign committees can accept contributions for the explicit purpose of nominating or electing a candidate. See id.

In 2021, the Georgia General Assembly passed a statute creating a new entity—the leadership committee. O.C.G.A. § 21-5-34.2(a) (the "LC Statute"). A

"leadership committee" must be "chaired by the Governor, the Lieutenant Governor, the nominee of a political party for Governor . . . , or the nominee of a political party for Lieutenant Governor."[2] Id. Like an independent committee and a PAC, a leadership committee may accept unlimited contributions. Id. § 21-5-34.2(e). Unlike independent committees and PACs, leadership committees may freely coordinate their expenditures with a candidate or his or her campaign committee without being subject to contribution limits, see id., to the point that they may even pay campaign expenses directly, id. § 21-5-34.2(d). Leadership committees must disclose all contributions and expenditures over $500 to the State Ethics Commission. Id. § 21-5-34.2(e).

### B.     Previous Litigation Over the LC Statute

Since its enactment in 2021, the LC Statute has been challenged five times in this District. Here, the Court discusses four of the five cases.[3] In Perdue v. Kemp, 584 F. Supp. 3d 1310, 1329 (N.D. Ga. 2022), the court granted a preliminary injunction enjoining sitting-Governor Brian Kemp's leadership committee from operating to expend funds in support of Kemp's re-election and defray costs of the

---

[2] The LC Statute also authorizes the majority and minority caucuses of the Georgia House of Representatives and Senate to designate two PACs as leadership committees. O.C.G.A. § 21-5-34.2(a).

[3] The fifth case, which challenged the LC Statute's limitation to only the Democratic and Republican nominees, Graham v. Carr, 634 F. Supp. 3d 1343 (N.D. Ga. 2022), is not relevant to the issue at hand. See also Graham v. Att'y Gen., State of Ga., 110 F.4th 1239 (11th Cir. 2024) (dismissing case as moot after the plaintiff lost the election for Lieutenant Governor).

campaign as allowed by the LC Statute. There, the court found that the plaintiffs—Kemp's challenger David Perdue and Perdue's campaign committee—were likely to succeed in their claim that the LC Statute violated the First Amendment because the government failed to establish a sufficiently important state interest justifying the law. Id. at 1327.

A month after the Perdue decision, gubernatorial candidate Stacey Abrams challenged the LC Statute on similar grounds. See Compl., One Ga., Inc. v. Carr, No. 22-CV-01130 (N.D. Ga. Mar. 21, 2022). Specifically, Abrams contended that the LC Statute unconstitutionally allowed the sitting governor (Kemp) to raise unlimited funds, through his leadership committee, for the express purpose of defeating Abrams before his nomination by the Republican party, while Abrams was required to wait until her nomination by the Democratic party to raise such unlimited funds. One Ga., Inc. v. Carr, 601 F. Supp. 3d 1291, 1300 (N.D. Ga. 2022). Abrams originally sued Georgia state officials to enjoin the State from enforcing contribution limits against Abrams' leadership committee, One Georgia, Inc., which the State had not recognized as a leadership committee because Abrams had not yet won the nomination. Id. at 1299–1300. The court declined to issue the requested injunction, concluding that the plaintiffs were not likely to succeed on the merits of their claim because they exclusively sought nonenforcement of the contribution limits against One Georgia:

> [T]he exclusive remedy [plaintiffs] seek is an injunction against the [State Ethics] Commission that effectively permits One Georgia to operate a leadership committee in contravention of state law and permits [Kemp's leadership committee] to continue to violate the First Amendment. In other words, Plaintiffs seek an order declaring the LC Statute unconstitutional as applied, but paradoxically at the same time seek injunctive relief that would maintain the LC Statute's constitutionality by allowing One Georgia to violate the state law that requires a nominee to be chosen in a primary. *Granting Plaintiffs' requested relief, which is to preclude the Commission from taking any enforcement action against One Georgia if they raise unlimited contributions before the primary, would require this Court to effectively rewrite the LC Statute* to recognize Abrams as the Democratic Party nominee before she has been selected in a primary as required by O.C.G.A. § 21-2-151(a). The Court is unable to re-write the LC Statute in such a manner. See Va. v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988) (holding that courts "will not rewrite a state law to conform it to constitutional requirements").

One Ga., Inc. v. Carr, 599 F. Supp. 3d 1320, 1336 (N.D. Ga. 2022) (emphasis added). Following this initial failure to secure an injunction, the plaintiffs brought Kemp's leadership committee in to the case and moved again for a preliminary injunction, this time seeking to prevent Kemp's leadership committee from receiving contributions before his nomination. One Ga., Inc., 601 F. Supp. 3d at 1301. Finding this challenge akin to the one in Perdue, the court granted the injunction. Id. at 1307, 1309.

The other two challenges to the LC Statute did not fare as well; the court dismissed both for the plaintiffs' lack of standing. In Democratic Party of Georgia, Inc. v. Kemp, the court held that a political party lacked standing to challenge the LC Statute in the absence of a specific upcoming election where a specific candidate

was able to raise unlimited funds while an opposing candidate was not. Order at 14, 29, Democratic Party of Ga., Inc. v. Kemp, No. 24-CV-3154, ECF No. 23 (N.D. Ga. Sept. 19, 2024). And more recently, in Carr v. WBJ Leadership Committee, the court held that another candidate in the Republican gubernatorial primary lacked standing to sue the WBJ, Burt Jones, and Jones's campaign committee. Order at 1–2, Carr v. WBJ Leadership Comm., No. 25-CV-04426, ECF No. 22 (N.D. Ga. Aug. 28, 2025). The court there concluded that the plaintiff's injury from the LC Statute was not traceable to the defendants, who were merely "benefiting from a law enacted to confer such a benefit[.]" Id. at 15. Furthermore, the court found that the injury would not be redressed by a favorable decision because (1) WBJ was just one of multiple leadership committees capable of harming the plaintiffs and (2) the defendants had no role in the LC Statute's enforcement, the cause of the plaintiff's "true injury." Id. at 19.

### C. Present Litigation Over the LC Statute

On December 8, 2025, SAG sued several state officials overseeing the enforcement of Georgia's allegedly unconstitutional campaign finance laws.[4]. See Compl. ¶¶ 3, 22. Specifically, SAG challenges Georgia's unequal treatment of SAG

---

[4] Those state officials are the Chairman, the Vice Chairman, and three members of the State Ethics Commission, which is charged with enforcement of Georgia's election laws, O.C.G.A. § 21-5-6, as well as Georgia's Attorney General. See Compl.

and WBJ.[5] Id. ¶¶ 23–30. To remedy the alleged unconstitutionality, SAG requests that this Court preliminarily enjoin Defendants from enforcing against SAG the following two statutes: O.C.G.A. § 21-5-30(a) (barring Plaintiff from accepting contributions to bring about the nomination or election of a candidate for office) and § 21-5-41 (preventing Plaintiff from making unlimited coordinated expenditures with a campaign committee). [Doc. 2 at 2].

The Court heard oral argument on Plaintiff's Motion on January 14, 2026. Having considered the briefs filed by both Parties and with the benefit of oral argument, the Court addresses Plaintiff's Motion below.[6]

## II. Legal Standard

To obtain injunctive relief, Plaintiff must demonstrate that: (1) there is a substantial likelihood of its success on the merits; (2) it will suffer irreparable injury if the injunction is not granted; (3) its threatened injury outweighs any damage that an injunction would cause Defendants; and (4) granting the injunction would not be adverse to the public interest. See Four Seasons Hotels & Resorts v. Consorcio Barr, 320 F.3d 1205, 1210 (11th Cir. 2003). As relevant here, "[w]hen the nonmovant is

---

[5] Raffensperger and Jones, the chairs of SAG and WBJ, respectively, are both contenders in this year's upcoming Republican gubernatorial primary election.

[6] On January 22, 2026, Plaintiff filed a Notice of Supplemental Authority, informing the Court of the Supreme Court's recent decision in Bost v. Illinois State Board of Elections, 607 U.S. ___ (2026). [Doc. 19]. Because Bost concerned standing of a candidate to bring a claim challenging an election law and Defendants have not challenged SAG's standing, Bost does not alter this Court's analysis.

the government, the third and fourth requirements . . . can be consolidated because neither the government nor the public has any legitimate interest in enforcing an unconstitutional [law]." LaCroix v. Town of Fort Myers Beach, 38 F.4th 941, 955 (11th Cir. 2022).

Injunctive relief is "an extraordinary and drastic remedy" that should be granted only when the movant clearly carries the burden of persuasion as to each of the prerequisites. Four Seasons, 320 F.3d at 1210. "To carry its burden" as to each element, "a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings[.]" Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001). The decision to grant an injunction lies "within the sound discretion of the district court[.]" See Int'l Cosms. Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (internal quotation marks and citation omitted).

## III. Discussion

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. amend. I; see also Gitlow v. People of State of N.Y., 268 U.S. 652, 666 (1925) (incorporating freedom of speech as protected by the Fourteenth Amendment against infringement by States). The freedom of speech "has its fullest and most urgent application precisely to the conduct of campaigns for political office." Fed. Election Comm'n v. Cruz, 596 U.S. 289, 302 (2022). In

particular, "spending for political ends and contributing to political candidates both fall within the First Amendment's protection of speech and political association." Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 440 (2001).

Nevertheless, States may permissibly "regulate campaign contributions to protect against corruption or the appearance of corruption." McCutcheon v. Fed. Election Comm'n, 572 U.S. 185, 191 (2014). But any such regulation is only constitutionally permissible "'if the State demonstrates a sufficiently important interest' and the law is 'closely drawn' to serve that state interest.'" Ala. Democratic Conf. v. Att'y Gen. of Ala., 838 F.3d 1057, 1063 (11th Cir. 2016) (quoting Buckley, at 25 (1976)). And the Supreme Court has consistently "identified only one legitimate governmental interest for restricting campaign finances: *preventing corruption or the appearance of corruption*." McCutcheon, 572 U.S. at 206 (emphasis added); see also Perdue, 584 F. Supp. 3d. at 1323–24 (rejecting "transparency" as a sufficiently important state interest that supports the LC Statute).

Plaintiff contends that Georgia's campaign finance scheme violates the First Amendment because Georgia law treats Plaintiff and WBJ unequally. [Doc. 2-1 at 10]. The thrust of SAG's argument is that the present campaign finance scheme gives WBJ an advantage over SAG because it permits WBJ to "raise unlimited funds and

11

use those funds in coordination with" Jones, while, through §§ 21-5-30(a) and 21-5-41, it caps the funds that SAG can use in coordination with Raffensperger. [Id.].

Plaintiff relies largely on Davis v. Fed. Election Comm'n, 554 U.S. 624 (2008). In Davis, the Supreme Court struck down a law that raised the individual contribution limits for one candidate when an opposing candidate spent more than $350,000 in personal funds. Id. at 736. In doing so, the Court noted that it had "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." Id. at 738. Plaintiff argues that the scheme here, which results in different contribution limits and coordination rules for Plaintiff's support of Raffensperger versus WBJ's support of Jones, Raffensperger's opponent, is similarly "antithetical to the First Amendment." Perdue, 584 F. Supp. at 1323 (quoting Davis, 554 U.S. at 744).

Defendants argue that Plaintiff's claim fails because the two provisions Plaintiff challenges—the fundraising-purpose restriction and the contribution limits—are "closely drawn" to serve the "sufficiently important interest" of preventing corruption or the appearance of corruption. [Doc. 14 at 13]. Defendants point out that the Supreme Court and other courts have upheld similar contribution and coordination limits. [Id. at 13–14 (citing Buckley, 424 U.S. at 20 and Colo. Republican Fed. Campaign Comm., 533 U.S. at 463)]. Therefore, Defendants

suggest, Plaintiff asks the Court to address the alleged unconstitutionality of the LC Statute by enjoining the enforcement of two constitutional statutes. [Id. at 16–17].[7]

Defendants also argue that Davis is inapposite. [Doc. 14 at 15]. According to Defendants, Davis concerned a contribution limit statute's "burden on 'the exercise of the First Amendment right to use personal funds for campaign speech,'" which compelled a more stringent level of constitutional scrutiny. [Id. at 16 (quoting Davis, 554 U.S. at 740)]. Here, Defendants argue, there are "no allegations regarding the expenditure of personal funds for campaign speech" and Plaintiff fails to cite "other caselaw that applies the proper test for challenges to contribution and coordination limits." [Id. at 16].

Plaintiff has failed to establish that it is substantially likely to succeed on the merits of its claim. This is so because the relief SAG seeks is incongruous with the injury. As Perdue well explains, the LC Statute is likely unconstitutional. See Perdue, 584 F. Supp. 3d at 1323–27. Georgia's election finance scheme functionally imposes no contribution limits for Jones but limits contributions for all other candidates in the primary. Because the scheme allows WBJ to accept unlimited contributions and to coordinate expenditures with the Jones campaign, the campaign may accept unlimited contributions to its campaign through WBJ. Meanwhile, although the scheme does not prevent SAG from accepting unlimited contributions,

---

[7] Defendants do not provide any arguments regarding the constitutionality of the LC Statute itself.

it caps SAG's coordinated expenditures with the Raffensperger campaign because the campaign may only accept contributions from SAG subject to the limits of § 21-5-41. This structure results in the "imposi[tion of] different contribution and coordinated . . . expenditure limits on candidates vying for the same seat"—a result "antithetical to the First Amendment." Perdue, 584 F. Supp. 3d at 1323 (quoting Davis, 554 U.S. at 743–44). This District has twice deemed this scheme likely unconstitutional. See Perdue, 584 F. Supp. at 1323; One Ga., Inc., 601 F. Supp. 3d at 1306.

Importantly, however, SAG does not ask the Court to strike the LC Statute as unconstitutional or, as in Perdue, enjoin WBJ's unlimited expenditures in coordination with the Jones campaign. Instead, SAG seeks to enjoin Georgia from enforcing two other statutes that prevent Plaintiff from (1) making unlimited contributions to Raffensperger's campaign while coordinating with the campaign and (2) accepting contributions for the purpose of electing Raffensperger. [See Doc. 2 at 2–3]. Therefore, instead of striking down the LC Statute as unconstitutional, Plaintiff's desired injunction would prevent the State from enforcing two separate statutes against Plaintiff. Allowing Plaintiff to operate unencumbered by coordination and contribution limits would "require this Court to effectively rewrite the LC Statute" and, in essence, recognize Plaintiff as a leadership committee, a creation of the very statute Plaintiff contends causes its constitutional harm. One

Ga., Inc., 599 F. Supp. 3d at 1336 (rejecting plaintiffs' request for an injunction that would "effectively permit[ plaintiffs] to operate a leadership committee in contravention of state law and permit[ an existing leadership committee] to continue to violate the First Amendment").

While Plaintiff suggests that Davis requires this Court to "raise or eliminate [the contribution] limits" as a remedy for Georgia's unconstitutional scheme, [Doc. 2-1 at 11 (quoting Davis, 554 U.S. at 743)], such a remedy would not fix the harms caused by the unconstitutionality of the LC Statute. Specifically, the multi-candidate landscape of the gubernatorial primary here is much different than the electoral landscape analyzed in Davis. There, the Supreme Court's wholesale elimination of the challenged contribution limits ensured that *all* candidates were on the same footing consistent with the First Amendment. Davis, 554 U.S. at 743–44. Here, enjoining enforcement of the contribution limits against Plaintiff would not prevent the unconstitutionality caused by the LC Statute because contributors to candidates other than Jones and Raffensperger would still be subject to those limits. See id. at 743. In other words, even if this Court were to grant the requested injunction and prevent Defendants from enforcing the contribution limits against SAG, the unconstitutional structure created by the LC Statute would remain and privilege Raffensperger over the remaining primary candidates still subject to those limits.

Accordingly, Plaintiff has not met its burden of establishing a substantial likelihood of success on the merits of its claim. No injunction may issue in the absence of this showing. Four Seasons, 320 F.3d at 1210. Thus, the Court does not reach the remaining prerequisites for a preliminary injunction. See Fla. Preborn Rescue, Inc. v. City of Clearwater, 161 F.4th 732 at 738 (11th Cir. 2025).

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction. [Doc. 2]. Defendants **SHALL** file their answer or pre-answer motion within **21 DAYS** of the entry of this order.

**SO ORDERED**, this 27th day of January, 2026.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia